

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 18, 2024

**By ECF**
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   United States v. Neil Phillips, 22 Cr. 138 (LJL)

Dear Judge Liman:

The Government writes to respond to the Guidelines arguments in the defense's supplemental sentencing submission of June 13, 2024. A proper reading of the Guidelines requires applying the 20-point enhancement for a loss in excess of $9.5 million because the defendant's crime involved an actual, and intended, loss of approximately $18 million. The Government will address the appropriate sentence at the sentencing hearing.

As the trial evidence showed, and as the Government explained in its initial sentencing submission, the defendant's fraudulent conduct caused Morgan Stanley to make a $20 million payment under the OT Option. That loss is appropriately offset by the approximately $2 million that Glen Point spent to purchase the option, resulting in a net actual, and intended, loss of approximately $18 million.

The defense is wrong to claim that the $18 million loss should be treated as no loss at all under the Guidelines because Morgan Stanley hedged its position. There is no dispute that Morgan Stanley made the $20 million payout to Glen Point. There is no dispute that this was a loss on Morgan Stanley's OT Option position. To the extent Morgan Stanley had *other* positions that offset the loss, that does not change the fact that the loss existed. At most, it shows that Morgan Stanley was able to have other market participants effectively cover its losses, which is not different in any principled way from passing loss onto an insurer. That is no reason to ignore the loss under the Guidelines and treat the defendant's conduct as if it caused no harm at all.

In its supplemental sentencing submission, the defense does not engage with these facts about the loss and instead argues that Morgan Stanley hedges many different types of risk. That is irrelevant. The Guidelines do not focus on Morgan Stanley's exposure to delta, gamma, vega, theta, or any other Greek letter—it focuses on pecuniary harm. On that score, any dollar that Morgan Stanley made back to offset its loss on the OT Option was a loss that, through its hedging, it passed to another market participant, regardless of what particular type of risk that Morgan

Stanley may have been managing. The fact that Morgan Stanley was a market maker managing many types of risks does not change the bottom-line analysis under the Guidelines.

The defense's alternative argument that loss should be reduced because the OT Option had value is also wrong on two fronts. First, it is legally wrong to reduce the loss by the value of the OT Option because the defendant expressed no interest in closing out the position. It is true that, at any point in time, the OT Option had a theoretical value that could be calculated using widely available tools, such as Bloomberg's OVML tool. But whether that theoretical value could turn into actual money was contingent on whether the defendant was interested in striking a deal with Morgan Stanley to effectively close out the OT Option position. Without a deal, the value of the OT Option was binary: either it triggered and Glen Point received $20 million, or it expired worthless. Here, the binary nature of the OT Option was all that mattered because the defendant was clear that he had no interest in closing out the position. The trial evidence showed that Glen Point rejected offers to close out the OT Option during the week of the ANC election (*see* Tr. 169; GX621), and the defendant chose to manipulate the exchange rate to trigger the option, rather than settling for something less than the full payout. This is not, then, akin to a situation where someone is defrauded into buying stock or a property and loss under the Guidelines must account for the whether the thing the victim purchased has value. Any value the OT Option had was temporary and, in light of the defendant's intent to win it all, entirely theoretical. That theoretical value should not count in the loss calculation.

Second, even if the Court reduced the loss by the theoretical value of the OT Option, the result would be an 18-point enhancement, rather than a 20-point enhancement. The defense's expert calculated the value of the OT Option on each day in December 2017. (Tr. 1091-93.) That chart showed the value of the OT Option was approximately $12 million on Friday, December 22, which was the last trading day before the defendant carried out his scheme on December 26. (*Id.*) If this Court reduced the $18 million loss by $12 million, the result would be a $6 million loss, which calls for an 18-point enhancement.

Rather than using that $12 million figure, the defense asserts that the value of the OT Option was $14.2 million. That number comes from the theoretical value of the option on Christmas Day. (Tr. 1091-93.) It is wrong to use that number because there is no evidence that the defendant could have struck a bargain on Christmas Day. And even if this Court used the $14.2 million figure, the actual and intended loss would be approximately $3.8 million, which still results in an 18-point enhancement. The defense only gets below that 18-point enhancement by asserting that Morgan Stanley actually valued the OT Option more dearly. But there is simply no evidence to support that position. The defense cites no internal Morgan Stanley documents to show that the bank placed a higher value on the OT Option, and the size of Morgan Stanley's trading activity on Boxing Day does not provide any meaningful information about how Morgan Stanley valued the OT Option, particularly given the lack of evidence about other USD/ZAR positions the bank had at the relevant time period. Accordingly, at most, the defense's argument should make a two-point difference under the Guidelines, reducing the 20-point enhancement to an 18-point enhancement.

For the foregoing reasons, and for the reasons set forth in the Government's initial sentencing submission, the applicable Guidelines range is 78 to 97 months' imprisonment, and this Court should impose a sentence of two years' imprisonment and a $1 million fine.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

by: ___/s/_____
Thomas Burnett
Andrew Thomas
Assistant United States Attorneys